Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
        sestradavillela@gastelumfirm.com

Christian Contreras, SBN 330269
**THE LAW OFFICES OF**
**CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF MICHAEL OLIVO, by and through successor in interest, Patricia Olivo; PATRICIA OLIVO, individually

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MICHAEL OLIVO, by and through successor in interest, Patricia Olivo; PATRICIA OLIVO, individually,<br><br>            Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ; and DOES 1 through 5, individually, jointly and severally,<br><br>            Defendants. | CASE NO. '24CV0896 W    MMP<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Provide Mental Health Treatment, Eighth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Protect from Harm, Eighth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>5. Wrongful Death;<br>6. Negligence;<br>7. Failure to Provide Medical Care;<br>8. Declaratory Relief (28 U.S.C. § 2201)<br><br>**DEMAND FOR JURY TRIAL** |

1

## **COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF MICHAEL OLIVO, by and through successor in interest, Patricia Olivo; and PATRICIA OLIVO, individually, and allege as follows:

## **I.**

## **INTRODUCTION**

1.     This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of Michael Olivo at the California Department of Corrections and Rehabilitation, Richard J. Donovan Correctional Facility on January 26, 2023. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.     Michael was the loving son of Patricia Olivo and the oldest of three (3) siblings. Michael is described by his family as a man filled with hope and excitement for the future. In 2021, Michael earned an Associate of Arts in Psychology and Liberal Arts, Magna Cum Laude. Michael had aspirations of obtaining a Bachelor of Arts degree and planned to enroll in courses while awaiting his parole hearing in June 2023. Given Michael's plans for reentry, Patricia was shocked to receive a call with the devastating news that her beloved son had passed away. Michael's death has been a profound and  unimaginable loss to his family. At the time of his death, Michael was only 42 years old.

3.      Long before Michael Olivo's death, each of the individually named defendants from the California Department of Corrections and Rehabilitation (hereinafter also "CDCR") and the California Correctional Health Care Services knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within CDCR's 33 correctional facilities, including the Richard J. Donovan Correctional Facility.

4.      The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the CDCR's correctional facilities through the long history of in-custody deaths as a result of the CDCR's failure to provide necessary and adequate treatment to inmates in need of mental health care. The Court in the federal class action *Coleman v. Newsom* (2:90-cv-00520-KJM-DB (hereinafter the "*Coleman* Class Action") appointed a Special Maser in 1995 to monitor the provision of mental health treatment and suicide prevention in the CDCR's correctional facilities. Pursuant to the consent decree in *Coleman,* the Special Master is required to file regular monitoring reports with the Court to ensure that the CDCR is fulfilling its constitutional obligations to inmates under the Eighth and Fourteenth Amendments.

5.      As a result of the Special Master reporting process and federal court orders, CDCR officials knew that CDCR policies and procedures in relation to mental health treatment and suicide prevention were inadequate. Each of the individually named defendants in this lawsuit also deliberately failed to provide sufficient oversight and leadership to ensure that staff at its CDCR facilities, including the Richard J. Donovan Correctional Facility, were adequately trained in suicide prevention or to ensure that CDCR mental health treatment and suicide prevention policies were actually implemented.

///

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## II.

## JURISDICTION AND VENUE

6.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

7.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

8.    Venue is proper within the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

9.    Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

10.    With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## IV.

## PARTIES

**A. Plaintiffs**

11.    Decedent Michael Olivo was 42 years old when he passed away on January 26, 2023.  He was a brother, uncle and the natural born son of Patricia Olivo. At the time of his death, he was incarcerated at the Richard J. Donovan Correctional Facility located in the County of San Diego, California. The claims made by Plaintiff

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

ESTATE OF MICHAEL OLIVO, are brought by the successor in interest, Patricia Olivo.

12.     Plaintiff PATRICIA OLIVO is and was, at all times relevant hereto, the natural mother of decedent Michael Olivo, and at all times relevant hereto was a resident of the County of Los Angeles, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Michael Olivo on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

**B. Defendants**

13.     Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION is an agency of the State of California that is responsible for the operation of the California state prison and parole systems, including operation of Richard J. Donovan Correctional Facility (hereinafter also "RJD"), where Michael Olivo died. At all times relevant to the facts alleged herein, CDCR was responsible for assuring that the actions, omissions, policies, procedures, and practices of its employees, including the California Correctional Health Care Services (hereinafter also "CCHCS") employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant CDCR is and was responsible for ensuring the protection and safety of all persons incarcerated at the 33 CDCR adult prison facilities, including RJD.

14.     Defendant JEFF MACOMBER is the Secretary for CDCR and was appointed to that position in or around December 2022. As Secretary, Defendant MACOMBER is the highest-level official in CDCR and responsible for administering and overseeing the operations of CDCR, including the management, safety, and security of all CDCR prisons and the inmates and staff therein, including RJD.

Defendant MACOMBER is responsible for supervision, training, discipline, and retention of agents and employees working within CDCR. He is responsible for promulgation and implementation of policies and procedures in CDCR, including at RJD, and was responsible for the care, custody, and control of all inmates housed in RJD. Defendant MACOMBER is regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the prisons, prison suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at RJD. Defendant MACOMBER is regularly provided and/or informed of the findings of the *Coleman* Special Master and the orders of the *Coleman* Court, including annual suicide audits. Defendant MACOMBER is sued in his individual capacity. Specifically, Defendant MACOMBER's failure to ensure enforcement of policies, rules or directives and/or failure to implement appropriate policies, rules or directives set in motion a series of acts by others which he knew or reasonably should have known would cause harm to Michael Olivo. Defendant MACOMBER's affirmative conduct includes his acquiescence in the violations alleged herein.

15.     Defendant DIANA TOCHE is and was, at all times relevant herein, the Undersecretary of Health Care Services for CDCR. As Undersecretary, Defendant TOCHE is and was responsible for supervising the day-to-day administration of all Health Care Services for the 33 CDCR adult prison facilities, including RJD, and responsible for overseeing and implementing policies, procedures, and practices related to the provision of mental health care services at these facilities. Defendant TOCHE is regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of individuals in the prisons, prison suicides, and other violations involving the mental health care and treatment of inmates at RJD. Defendant TOCHE is a named official capacity Defendant in the *Coleman* litigation and is regularly provided and/or informed of the findings of the *Coleman* Special Master and the orders of the *Coleman* Court, including annual suicide audits.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Defendant TOCHE is also the direct supervisor of Defendant MEHTA. Defendant TOCHE is sued in her individual capacity. Specifically, TOCHE knowingly failed to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which she knew or reasonably should have known would cause others to inflict a constitutional injury on Michael Olivo. Defendant TOCHE's affirmative conduct includes the acquiescence in the violations alleged herein.

16.     Defendant RONALD BROOMFIELD is the Director of the Division of Adult Institutions ("DAI") for CDCR, and was appointed to that position in or around August 2023. As Director of DAI, Defendant BROOMFIELD is responsible for supervising the day-to-day administration of the 33 CDCR adult prison facilities, including RJD, and overseeing and implementing policies, procedures, and practices related to the operations of these facilities. Defendant BROOMFIELD is regularly provided and/or informed of the findings of the *Coleman* Special Master and the orders of the *Coleman* Court, including annual suicide audits. Defendant BROOMFIELD knowingly failed to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Michael Olivo. Defendant BROOMFIELD's affirmative conduct includes acquiescence in the violations alleged herein. Defendant BROOMFIELD is sued in his individual capacity.

17.     Defendant AMAR MEHTA is the Deputy Director of the Statewide Mental Health Program for CDCR. In this role, Defendant MEHTA is responsible for overseeing provision of mental health care in CDCR, promulgating and implementing policies and procedures, supervision of practices, and taking corrective action when necessary to ensure provision of constitutionally adequate care. Defendant MEHTA was and is aware of the *Coleman* Special Master reports, the orders of the *Coleman* Court, and the findings of the *Coleman* Court that CDCR continues to fail to provide constitutionally adequate mental health treatment to inmates. Defendant MEHTA is

1   regularly provided with reports concerning the treatment of mentally ill inmates,

2   improper classification of individuals in the prisons, prison suicides, and other

3   violations involving the mental health care and treatment of inmates at RJD.

4   Defendant MEHTA is regularly provided and/or informed of the findings of the

5   *Coleman* Special Master and the orders of the *Coleman* Court, including annual

6   suicide audits. Defendant MEHTA knowingly failed to ensure enforcement of

7   policies, rules or directives that set in motion a series of acts by others which he knew

8   or reasonably should have known would cause others to inflict a constitutional injury

9   on Michael Olivo.

10      18.    Defendant JAMES HILL is the Warden for RJD and legally responsible

11   for oversight of operations at RJD, implementation of CDCR policy and procedures,

12   staff training, safety and security of inmates housed at RJD, and the supervisor of all

13   other individual Defendants employed at RJD. Defendant HILL is regularly provided

14   and/or informed of the findings of the *Coleman* Special Master and the orders of the

15   *Coleman* Court relating to RJD, including annual suicide audits. Defendant HILL is

16   sued in his individual capacity. HILL's affirmative conduct involves his knowing

17   failure to ensure enforcement of policies, rules, or directives that set in motion a

18   series of acts by others which he knew or reasonably should have known would cause

19   others to inflict a constitutional injury on Michael Olivo. Defendant HILL's

20   affirmative conduct includes acquiescence in the violations alleged herein.

21      19.    Defendant CHRISTOPHER PODRATZ is the Health Care Chief

22   Executive Officer ("CEO") for RJD. In this role, Defendant PODRATZ is the hiring

23   authority for all health care staff at RJD, including medical, dental, and mental health

24   care, and is responsible for the hiring, promotion, training, and supervision of health

25   care staff at RJD. Defendant PODRATZ is sued in his individual capacity. Defendant

26   PODRATZ is regularly provided with reports concerning the treatment of mentally ill

27   inmates, improper classification of individuals in the prisons, prison suicides, and

28   other violations involving the mental health care and treatment of inmates at RJD.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Defendant PODRATZ is regularly provided and/or informed of the findings of the *Coleman* Special Master and the orders of the *Coleman* Court relating to RJD, including annual suicide audits. PODRATZ's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Michael Olivo. Defendant PODRATZ's affirmative conduct includes acquiescence in the violations alleged herein.

20.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 5 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

21.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 5 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 5 include individual law enforcement personnel and medical personnel employed by the CDCR and the CDCR's Correctional Health Care Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 5 were and still are residents of the County of San Diego, California. DOES 1 through 5 are sued in both their individual and official capacities.

22.     Defendant DOE 1 is an employee of CDCR and the Chief of Mental Health at RJD during the time period relevant to the events, actions, and omissions

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

described herein. Defendant DOE 2 is responsible for chairing the Suicide Prevention and Response Focused Implementation Team at RJD. Through chairing of this team and supervision of provision of mental health care at RJD, Defendant DOE 1 is responsible for reviewing and implementing CDCR policies and procedures related to suicide prevention at RJD, and responsible for ensuring that appropriate corrective actions were taken to address deficiencies in suicide prevention identified by the *Coleman* Special Master and CDCR's internal review process. On information and belief, Defendant DOE 1 failed to ensure that the Suicide Prevention and Response Focused Implementation Team fulfilled its obligations. On information and belief, Defendant Doe 1 also failed to supervise mental health staff at RJD and implement appropriate procedures and training to ensure adequate completion of treatment planning and suicide risk evaluations for patients with serious mental health needs and risk of suicide.

23.     Defendants DOES 3 through 5 are additional employees of CDCR, including but not limited to correctional officers within RJD, civilian staff, and medical and mental health professionals who were responsible for implementation of CDCR policy and procedures, and the safety and security of inmates including Michael Olivo. Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein. At the present time, the identities of DOES 3-5 are unknown and not discoverable to Plaintiffs without access to documents within the sole custody and control of Defendants. Plaintiffs will ask leave of this Court to amend this Complaint to allege such names and responsibility when that information is ascertained. DOES 3-5 are sued in their individual capacity.

24.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by

failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

25.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Michael Olivo's constitutional rights and other harm.

26.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

27.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

28.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

///

///

///

///

# V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. Prior to Michael's Death, CDCR Officials Were Required to Remediate Known Deficiencies in Mental Health Treatment Throughout Its Facilities

29.     In 1990, a group of inmates with serious mental illness filed a federal class action in the Eastern District of California alleging that inadequate provision of mental health treatment in CDCR violated their rights under the Eighth Amendment to the U.S. Constitution. *Coleman v. Wilson,* E.D. Cal. Case No. 2:90-cv-00520-KJM-DB.

30.     In 1995, the *Coleman* Court ruled that the State of California, through CDCR, was violating the Eighth Amendment of the U.S. Constitution by failing to provide adequate mental health treatment to inmates with serious mental illness. *See Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995). The *Coleman* Court identified numerous ways in which CDCR failed to provide constitutionally adequate care, including "incomplete or nonexistent treatment plans." See 912 F. Supp. 1282. The *Coleman* Court ordered CDCR to correct these deficiencies and provide adequate mental health care for inmates with serious mental illness.

31.     In December 1995, the Court appointed a Special Master to monitor the implementation of required policies and procedures for provision of constitutionally adequate mental health care. The Special Master is ordered to file regular reports that are provided to the Court and the parties to the *Coleman* case, including CDCR officials, reflecting the findings and recommendations of the Special Master, and his team of subject matter experts. "The adequacy of suicide prevention" was one of the many areas of mental health treatment the Special Master was ordered to review.

32.     In 2013, despite issuing hundreds or more remedial orders, the *Coleman* Court found that CDCR and its officials had not yet adequately addressed the deficiencies found by the Court in 1995. *Coleman v. Brown*, 938 F. Supp. 2d 955, 959 (E.D. Cal. 2013). The Court ruled, based on extensive evidence, that CDCR

continues to violate the Eighth Amendment by failing to provide adequate mental health treatment to inmates. As a result, the Coleman case is still active, with regular audits conducted by the Special Master, and orders issued by the *Coleman* Court in response to findings and recommendations in these reports.

33.     The *Coleman* Court has consistently made findings and corresponding orders over the years relating to CDCR's ongoing inadequacies in suicide prevention policies and practices that, on information and belief, are reviewed directly by the CDCR statewide chain of command responsible for oversight and implementation of mental health treatment policies, procedures, and practices. This statewide chain of command includes the Secretary of CDCR, the Undersecretary of Health Care Services, the Director of the Division of Adult Institutions, and the Deputy Director of the Statewide Mental Health Program for CDCR, positions held by individual Defendants named in this case.

**B.  In 2022, the *Coleman* Special Master Identified Deficiencies in Mental Health Treatment and Suicide Prevention at RJD**

34.     At the times relevant to the events described herein, there were five CDCR officials primarily responsible for reviewing the *Coleman* Special Master's findings and recommendations and the *Coleman* Court's orders, making necessary changes in CDCR policies, procedures, practices, and trainings; and ensuring that these changes were actually implemented throughout CDCR, including at RJD: (i) Defendant MACOMBER, the Secretary of CDCR; (ii) Defendant TOCHE, the Undersecretary of Health Care Services for CDCR; (iii) Defendant BROOMFIELD, the Director of the Division of Adult Institutions for CDCR; and (iv) Defendant MEHTA, the Deputy Director of the Statewide Mental Health Program for CDCR. Defendants were named official-capacity Defendants in the *Coleman* litigation.

35.     At the times relevant to the events described herein, there were three RJD officials responsible for oversight of mental health treatment and suicide

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

prevention at RJD, and ensuring that related policies, procedures, and trainings were implemented, including those addressing deficiencies identified by the *Coleman* Court and Special Master: (i) Defendant HILL, the Warden for RJD; (ii) Defendant PODRATZ, the Chief Executive Officer of RJD; and (iii) Defendant DOE 2, the Chief of Mental Health at RJD.

36.   On October 24, 2022, nearly three months prior to Mr. Olivo's death, the *Coleman* Special Master filed the "Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs." ECF No. 7636-1 (Hayes Report). The Special Master's 2022 Audit was based on a review of conditions related to suicide prevention in 23 CDCR facilities, including RJD, from May 24, 2021 to April 22, 2022, by Court-appointed national suicide prevention expert Lindsay Hayes. Among many other various inadequate practices, the 2022 review identified RJD's compliance with annual suicide prevention training for custody, medical, and mental health personnel as "problematic." Hayes Report at 145. More specifically, training records indicated that "only 37 percent of custody staff, 61 percent of medical staff, and 65 percent of mental health staff" had received the required suicide prevention training during the prior 12 months. Hayes Report at 135. Mr. Hayes expert report also concluded:

> There were multiple violations of suicidal MHCB [Mental Health Crisis Bed] patients not observed at required 15-minute intervals. There were concerns regarding the frequency of yard and telephone calls afforded to MHCB patients. MHCB supervisory review of discharge SRASHE [Suicide Risk Assessment and Self-Harm Evaluations] and safety plans was inconsistent. Compliance with discharge custody checks was problematic.

37.   On January 6, 2023, the *Coleman* Court entered an order adopting all of the Special Master's recommendations. ECF. No. 7696. Pursuant to the Court's Order, Defendants were required to take steps to implement the changes set forth in

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

the Special Master's recommendations to address the unreasonable risk of harm by suicide at RJD. The Court's order further stated:

> For most of the past two decades, California's annual inmate suicide rate has equaled or exceeded the national average for inmate suicides in the nation's prisons. Total inmate suicides in California have ranged from a low of 15 in 2000 and 2021 to a high of 43 in 2005 and 2006; the total reached 38 as recently as 2019.1 In 2019 and the two preceding years, California's inmate suicide rate was the fourth highest out of the ten largest correctional systems in the United States.

38.     Moreover, the Court noted that the "best methodology for determining whether a correctional system has fully implemented its suicide prevention program," as further explained by Mr. Hayes, "continues to be: (1) the assessment of suicide prevention practices within each prison, and (2) a review of each inmate suicide in relation to practices in the prison and determining its degree of preventability."

39.     Thus, in January 2023, Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL, and PODRATZ were well aware that training for custodial staff, medical staff and mental health clinicians at RJD was not adequate to ensure compliance with CDCR policies and procedures regarding the provision of adequate mental health care and suicide prevention.

**C. Supervisory Defendants Knew that Provision of Mental Health Treatment and Suicide Prevention Were Inadequate at RJD and that this Posed Substantial Risk of Serious to Harm to Michael Olivo**

40.     On or about March 28, 2022, Michael Olivo was transferred to the California Department of Corrections and Rehabilitation, Richard J. Donovan Correctional Facility located at 480 Alta Rd, San Diego, CA 92179. Mr. Olivo had initially entered the CDCR system on or about November 7, 2000. Prior to his transfer to RJD, Mr. Olivo was incarcerated at Kern Valley State Prison.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

41.     Upon information and belief, Mr. Olivo submitted a Health Care Services Request Form requesting to speak with a psychiatrist on or about March 16, 2022, at the Kern Valley State Prison. However, Mr. Olivo was not seen by a psychiatrist prior to being transferred to RJD and a new order was not placed upon his arrival to RJD.

42.     Upon information and belief, in the weeks leading up to his death Mr. Olivo was identified as an immediate threat to the safety of himself and others. Thereafter, Mr. Olivo was placed in the Administrative Segregation Unit (ASU) on or about January 12, 2023.

43.     On January 26, 2023, at approximately 4:40am, Mr. Olivo was found hanging from the property shelf in his cell by a sheet tied around his neck. Mr. Olivo was pronounced dead at 5:18am.

44.     Michael Olivo was forty-two years old when he died on January 26, 2023, while he was in custody at the Richard J. Donovan Correctional Facility.

45.     Upon information and belief, CDCR's internal review of Mr. Olivo's death identified various corrective actions in relation to his death. One of these corrective measures included ensuring that staff responding to a suicide or attempted suicide have a cut-down kit.

46.     Moreover, CDCR's own policies recognize that "suicide prevention and response" is a critical component of mental health treatment, as set forth in the CDCR "Mental Health Services Delivery System Program Guide." CDCR policy requires that medical and custodial staff have a cut-down kit when responding to an emergency like a suicide because "clearing the obstruction to the airway as quickly as possible is critical to saving the life of the inmate who has attempted suicide by hanging." In addition to this, staff must "relieve pressure on the airway by using a stable object for support of the inmate's body or by physically lifting the inmate's weight off the noose." Once this has been done, the inmate "shall be cut down by cutting above the knot and then loosening the noose."

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

47.     Prior to Mr. Olivo's death in January 2023, Defendants MACOMBER, TOCHE, BROOMFIELD, and MEHTA, as the CDCR state-level chain of command responsible for the implementation of policies, procedures, and training regarding provision of mental health care and suicide prevention for CDCR statewide, had been ordered by the *Coleman* Court, to correct specific known deficiencies in provision of mental health care at RJD that created a serious risk of harm, including suicide, for inmates at RJD.

48.     Upon information and belief, Defendants MACOMBER, TOCHE, BROOMFIELD, and MEHTA directly received and/or were directly informed of the orders and recommendations of the *Coleman* Court and the reports of the *Coleman* Special Master prior to Mr. Olivo's death in January 2023. Yet, each of these supervisory Defendants deliberately failed to take necessary and reasonable actions within their respective scope of responsibility to cure the identified deficiencies and ensure compliance with existing CDCR policies and procedures. These Defendants' failure to timely and adequately comply with the Court's directives to correct these known constitutional deficiencies in the provision of mental health care at RJD were the moving force directly resulting in Mr. Olivo's death.

49.     Defendants HILL and PODRATZ, as the Warden and Chief Executive Officer of RJD, were responsible for implementing the *Coleman* Court's orders at RJD, ensuring that inmates at RJD were receiving constitutionally adequate mental health care, and fixing known problems in the provision of mental health care and suicide prevention. On information and belief, Defendants HILL and PODRATZ directly received and/or were directly informed of the orders and recommendations of the *Coleman* Court and the reports of the *Coleman* Special Master as they pertained to RJD to Mr. Olivo's death in January 2023. However, Defendants HILL and PODRATZ deliberately failed to take necessary actions with their scope of responsibility to remediate the known and identified deficiencies in mental health treatment and suicide prevention. Moreover, Defendants HILL and PODRATZ

deliberate failure to correct known deficiencies in the provision of mental health care at RJD created unreasonable risk of harm for Michael Olivo and led directly to his death.

50.     Plaintiffs timely and properly filed tort claims with the California Department of Corrections and Rehabilitation pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

51.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## IX.

### FIRST CAUSE OF ACTION

**Deliberate Indifference to Serious Mental Health Needs in Violation of the Eighth Amendment to the Constitution of the United States (Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Olivo As Against Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ**

52.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

53.     Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL and PODRATZ failed to promulgate, implement, and/or enforce adequate policies, procedures, practices, and training to ensure provision of minimally adequate mental health treatment to inmates housed at RJD, including policies, procedures, and corrective training expressly ordered to be implemented by the Coleman Court.

54.     Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL and PODRATZ failed to promulgate, implement, and/or enforce policies, procedures,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   and practices to ensure that mental health staff met the standard of care when

2   providing treatment to RJD inmates.

3       55.   Defendants HILL, PODRATZ and Doe 2 also failed to adequately

4   supervise the provision of mental health services at RJD, violating their constitutional

5   obligation to ensure that inmates entrusted to their care receive necessary treatment

6   and that the *Coleman* orders were being implemented at RJD.

7       56.   Defendants HILL, PODRATZ, and Doe 2 also failed to properly train

8   and supervise custody staff regarding policies, procedures, and practices necessary

9   for the provision of adequate mental health care, including those policies and

10  procedures that had been ordered by the *Coleman* Court.

11      57.   Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL

12  and PODRATZ were on notice for years prior to the death of Michael Olivo that their

13  provision of mental health care fell far short of the minimum elements of a

14  constitutional health care system.

15      58.   These Defendants were specifically on notice that their policies,

16  procedures, and practices resulted in failure to provide necessary mental health care

17  to the inmates at RJD, and that this failure may result in otherwise preventable death

18  and suffering.

19      59.   Defendants were on notice specifically through the *Coleman* Special

20  Master Reports and Court Orders that providing appropriate treatment to address

21  increased suicidality is a critical component of mental health treatment, and CDCR

22  policies reflect this awareness.

23      60.   Defendants' failure to correct their policies, procedures, and practices

24  despite notice of significant and dangerous problems evidences deliberate

25  indifference to the inmates in their care.

26      61.   Defendant MACOMBER, as Secretary of CDCR, and Defendant

27  BROOMFIELD, as Director of DAI, were responsible for ensuring the safety and

28  security of inmates within CDCR, including ensuring that they received

constitutionally adequate mental health treatment. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendants MACOMBER and BROOMFIELD knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

62.     Defendant TOCHE, as Undersecretary of Health Care Services for CDCR, and Defendant MEHTA, as Deputy Director of the Statewide Mental Health Program for CDCR, were responsible for the administration of health care services to inmates with CDCR, including ensuring that they received constitutionally adequate mental health treatment. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendants TOCHE and MEHTA knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

63.     Defendant HILL, as Warden of RJD, was responsible for the safety and security of inmates at RJD, including ensuring that they received constitutionally adequate mental health treatment. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendant HILL knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo. Defendant PODRATZ, as CEO at RJD, was responsible for ensuring that medical staff at RJD provided constitutionally adequate mental health treatment to inmates including Michael Olivo. Despite repeated notice that medical staff at RJD were not providing adequate and necessary care consistent with the Constitution and CDCR's own requirements, Defendant PODRATZ knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

64.     Each of Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL and PODRATZ, intentionally, willfully, knowingly, and deliberately failed to take reasonable and sufficient actions to implement the recommendations of the *Coleman* Special Master regarding mental health treatment and suicide prevention at RJD that were ordered by the *Coleman* Court, placing Michael Olivo at undue and substantial risk of harm by suicide.

65.     Defendants' actions and/or omissions as alleged herein, including but not limited to their failure to provide Michael Olivo with appropriate psychiatric care and to identify suicide risk, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to identify suicide risk and provide psychiatric treatment, constituted objective and subjective deliberate indifference to Michael Olivo's serious psychiatric needs, health, and safety.

66.     As a direct and proximate result of Defendants' conduct, Michael Olivo experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

67.     The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Michael Olivo and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

///
///
///
///
///
///
///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## X.

## SECOND CAUSE OF ACTION

**Failure to Protect from Harm,**

**Violation of the Eighth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Olivo As Against Defendants JEFF**

**MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA;**

**JAMES HILL; CHRISTOPHER PODRATZ**

68.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

69.    Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL and PODRATZ were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm, including self-harm, to an inmate in Michael Olivo's position.

70.    Each Defendant could have taken action to prevent unnecessary harm to Michael Olivo but knowingly and deliberately refused or failed to do so.

71.    Defendant MACOMBER, as Secretary of CDCR, and Defendant BROOMFIELD, as Director of DAI, were responsible for ensuring the safety and security of inmates within CDCR, including taking reasonable actions to address substantial risk of serious harm. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendants MACOMBER and BROOMFIELD knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

72.    Defendant TOCHE, as Undersecretary of Health Care Services for CDCR, and Defendant MEHTA, as Deputy Director of the Statewide Mental Health Program for CDCR, were responsible for the administration of health care services to inmates with CDCR, including taking reasonable actions to address substantial risk of

serious harm. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendants TOCHE and MEHTA knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

73.    Defendant HILL, as Warden of RJD, was responsible for the safety and security of inmates at RJD, including taking reasonable actions to address substantial risk of serious harm. Despite repeated notice that CDCR's policies, procedures, and practices for provision of mental health treatment and suicide prevention at RJD were inadequate, Defendant HILL knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

74.    Defendant PODRATZ, as CEO at RJD, was responsible for ensuring that medical staff at RJD provided constitutionally adequate mental health treatment to inmates including Michael Olivo. Despite repeated notice that medical staff at RJD were not providing adequate and necessary care consistent with the Constitution and CDCR's own requirements, Defendant PODRATZ knowingly and deliberately failed to undertake necessary corrective action to remedy these deficiencies, resulting in the death of Michael Olivo.

75.    Defendants were on notice that their policies, procedures, and practices for monitoring and housing inmates with known suicide risk were inadequate and gave rise to a substantial risk of serious harm.

76.    Defendants knowingly failed to properly train and supervise staff regarding policies, procedures, and practices necessary for the protection of inmates from harm, including self-inflicted harm.

77.    Defendants' failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences objective and subjective deliberate indifference to the inmates in their care.

78.     Each of Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL and PODRATZ, intentionally, willfully, knowingly, and deliberately failed to take reasonable and sufficient actions to implement the recommendations of the *Coleman* Special Master regarding mental health treatment and suicide prevention at RJD that were ordered by the *Coleman* Court, placing Michael Olivo at undue and substantial risk of harm by suicide.

79.     Defendants' actions and/or omissions as alleged herein, including but not limited to their failure to provide Michael Olivo with appropriate psychiatric care and to identify suicide risk, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to identify suicide risk and provide psychiatric treatment, constituted objective and subjective deliberate indifference to Michael Olivo's serious psychiatric needs, health, and safety.

80.     As a direct and proximate result of Defendants' conduct, Michael Olivo experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

81.     The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

///

///

///

///

///

///

///

# XI.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent, Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)**

**By Plaintiff PATRICIA OLIVO As Against Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ**

82.　Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

83.　The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Michael Olivo's serious psychiatric needs, health, and safety, violating Michael Olivo's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the her untimely and wrongful death, deprived Plaintiff PATRICIA OLIVO of her liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

84.　As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff PATRICIA OLIVO suffered injuries and damages as alleged herein.

85.　The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

///

///

## XII.

## FOURTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Michael Olivo As Against Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ; and DOES 1 and 2**

86.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

87.     Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL, PODRATZ, and Does 1 and 2 had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

88.     Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

89.     As a direct and proximate result of Defendants' failure, Plaintiffs suffered injuries and damages as alleged herein.

90.     The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

///

///

///

///

///

# XIII.

## FIFTH CAUSE OF ACTION

### Wrongful Death

### (Cal. Code of Civ. Proc. § 377.60)

**Plaintiff PATRICIA OLIVO As Against ALL Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ**

91.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

92.     Michael Olivo's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants. Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiffs' injuries and damages, as alleged herein.

93.     As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs incurred expenses for funeral and burial expenses in an amount to be proved.

94.     As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs suffered the loss of the services, society, care, and protection of the decedent, as well as the loss of the present value of her future services to her family. Plaintiffs are further entitled to recover prejudgment interest.

95.     Plaintiff ESTATE OF MICHAEL OLIVO is entitled to recover punitive damages against individual Defendants who, with conscious regard of Michael Olivo's rights, failed to provide her with health care services meeting the professional standard of practice, and/or failed to adhere to legal and professional standards of correctional supervision and administration.

96.     The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore

malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**XIV.**

**<u>SIXTH CAUSE OF ACTION</u>**

**Negligence**

**Plaintiff PATRICIA OLIVO As Against Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ**

97.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

98.     Defendants failed to comply with professional standards in the care and supervision of Michael Olivo during his incarceration at RJD. The failures by Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL, and PODRATZ include but are not limited to failing to ensure the provision of timely and necessary mental health treatment and failing to ensure appropriate assessment and evaluation of suicide risk through the adoption, promulgation, and implementation of adequate policies, procedures, and training.

99.     Defendants MACOMBER, TOCHE, BROOMFIELD, MEHTA, HILL, and PODRATZ also failed to appropriately supervise, review, and ensure the competence of provision of care and treatment to Michael Olivo by medical and custody staff, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

100.    Together, Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, Plaintiffs suffered injuries and damages as alleged herein.

101.    The negligent conduct of Defendants was committed within the course and scope of their employment.

102.   The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## XV.

## **SEVENTH CAUSE OF ACTION**

### **Failure to Provide Medical Care**

### **Plaintiff ESTATE OF MICHAEL OLIVO As Against Defendant DOES 3-5**

103.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

104.   Custodial DOE Defendants 3-5 owed Michael Olivo a duty of care to provide him immediate medical care.

105.   The conduct of DOE Defendants 3-5 alleged herein, including but not limited to the facts that Defendants knew or had reason to know that on or before January 26, 2023, Michael Olivo needed immediate medical care and was not given such care, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

106.   The alleged conduct of DOE Defendants 3-5 was committed within the course and scope of their employment.

107.   As a direct and proximate result of Defendants' breach, Michael Olivo suffered injuries and damages causing great pain and leading to her death, as alleged herein.

108.   The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

# XVI.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

**Plaintiffs As Against Defendants JEFF MACOMBER; DIANA TOCHE; RONALD BROOMFIELD; AMAR MEHTA; JAMES HILL; CHRISTOPHER PODRATZ**

109.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

110.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

111.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

# XVII.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Michael Olivo, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Michael Olivo's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Michael Olivo's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.     General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

F.     Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

G.     Punitive damages as to the individual defendants;

H.     Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine); and

I.     All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: May 21, 2024            **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL OLIVO, by and through successor in interest, Patricia Olivo; PATRICIA OLIVO, individually

Dated: May 21, 2024            **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF MICHAEL OLIVO, by and through successor in interest, Patricia Olivo; PATRICIA OLIVO, individually

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

## DEMAND FOR JURY TRIAL

2       Plaintiffs, ESTATE OF MICHAEL OLIVO, by and through successor in

3 interest, Patricia Olivo; and PATRICIA OLIVO, individually, hereby make a demand

4 for a jury trial in this action.

5

6 Dated: May 21, 2024        **GASTÉLUM LAW, APC**

7                    By: _____

8                    Denisse O. Gastélum, Esq.

9                    Selene Estrada-Villela, Esq.

10                    Attorneys for Plaintiffs,
ESTATE OF MICHAEL OLIVO, by and through

11                    successor in interest, Patricia Olivo; PATRICIA
OLIVO, individually

12

13 Dated: May 21, 2024        **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A Professional Law Corporation**

14

15                    By: _____

16                    Christian Contreras, Esq.

17                    Attorneys for Plaintiffs,
ESTATE OF MICHAEL OLIVO, by and through

18                    successor in interest, Patricia Olivo; PATRICIA
OLIVO, individually

19

20

21

22

23

24

25

26

27

28

32