UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MICHAEL OLIVO, by and through successor in interest, PATRICIA OLIVO, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,<br><br>                                    Defendants. | Case No.:  24cv896-W-MMP<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE PUNITIVE DAMAGES [DOCS. 43, 49]** |

## I.    INTRODUCTION

Pending before the Court are two motions to dismiss: one by Defendants Jeff Macomber, Diana Toche, Connie Gipson, Amar Mehta, James Hill, and Christopher Podratz (the "Executive Defendants") to dismiss all causes of action asserted against them in the TAC and to strike Plaintiffs' punitive damages, and another by Defendants Osuji and Haas[1] to dismiss several causes of action against them and also strike punitive

---

[1] The Court will refer to the Executive Defendants and Defendants Haas and Osuji individually, or collectively as Defendants. As of the date of this order, Defendants Mendoza and Raymond do not

24cv896-W-MMP

damages. (*Mtn.* [Doc. 43]; *Second Mtn*. [Doc. 49].) Plaintiffs oppose both motions. (*Opp'n* [Doc. 45]; *Second Opp'n* [Doc. 50].) In the event the Court grants the motions to dismiss, Plaintiffs request leave to amend.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Court **GRANTS** the motions to dismiss the TAC's first through third causes of action as to all Defendants, the fourth cause of action as to the Executive Defendants and Defendant Haas, the fifth and sixth causes of action as to the Executive Defendants, and the seventh cause of action as to Defendant Haas and Osuji. All causes of action asserted against the Executive Defendants are dismissed **WITHOUT LEAVE TO AMEND**, while all causes of action asserted against Defendant Haas and Osuji are dismissed **WITH LEAVE TO AMEND**. The Court also **STRIKES** Plaintiffs' punitive damages as to all Defendants.

## II.   BACKGROUND

On January 26, 2023, 42-year-old Michael Olivo died while in custody at the California Department of Corrections and Rehabilitation ("CDCR"), Richard J. Donovan (hereinafter "RJD") Correctional Facility. (*TAC* [Doc. 40] at ¶ 1.) Mr. Olivo entered the CDCR system originally in November 2000 and was incarcerated at Kern Valley State Prison. (*Id*. at ¶ 50–51.) At that time, he received mental health treatment for symptoms of major depression and was diagnosed with dysthymic disorder and anti-social personality disorder. (*Id*. at ¶ 51.) Mr. Olivo was allegedly housed in a mental health unit on three occasions between March, April, and July 2022. (*Id*. at ¶ 53.) Although he did not receive formal services through CDCR's Mental Health Services Delivery System ("MHSDS"), Mr. Olivo participated in a mental health coping group from September to December 2022. (*Id*. at ¶ 54.)

---

appear to have been served and are not represented by counsel. Therefore, this order does not apply to them.

In March 2022, while incarcerated at Kern Valley, Mr. Olivo allegedly submitted a Health Care Services Request Form requesting to speak with a psychiatrist, but he never met with one, and a new order was not placed upon his transfer to RJD later that month. (*Id.* at ¶ 52.) On January 12, 2023, Mr. Olivo was placed in the Administrative Segregation Unit ("ASU") in a single person cell due to concerns for his safety. (*TAC* at ¶ 55.) That same day, Defendant Osuji, a vocational nurse, completed a pre-placement mental health screening and Defendant Mendoza, a psychiatric technician, then completed an initial mental health screening. (*Id.* at ¶ 58–59.) Plaintiffs allege that the above Defendants failed to adequately complete a suicide risk assessment, and Defendant Mendoza additionally failed to ensure that Mr. Olivo was provided with follow-up treatment while housed in the ASU. (*Id.*)

One week later, Mr. Olivio met with Defendant Haas, a senior psychologist specialist, who Plaintiffs allege failed to adequately complete an initial Mental Health Placement Chrono ("MHPC") which is meant to assess an inmate patient's level of care, among other things. (*Id.* at ¶ 60.) Then on January 25, 2023, Plaintiffs allege Defendant Raymond, a psychiatric technician, completed a suicide risk assessment, but failed to do so adequately "and [who] noted that there was no access to suicide means." (*Id.* at ¶ 61.) Less than twenty-four hours later, Mr. Olivo was found hanging by a sheet tied around his neck in his cell and was pronounced dead at 5:18 a.m. (*Id.* at ¶ 62.)

Plaintiffs have brought suit against various defendants in their individual capacities, including: (1) Jeff Macomber, CDCR Secretary; (2) Diana Toche, CDCR Undersecretary of Health Care Services; (3) Connie Gipson, CDCR Director of the Division of Adult Institutions; (4) Amar Mehta, CDCR Deputy Director of the Statewide Mental Health Program; (5) James Hill, RJD Warden; (6) Christopher Podratz, RJD Health Care Chief Executive Officer; (7) Kristen Haas, a CDCR Senior Psychologist Specialist and clinical supervisor; (8) Oscar Mendoza, CDCR Correctional Health Care Services Psychiatric Technician; (9) Rebecca Raymond, also a CDCR Psychiatric

24cv896-W-MMP

Technician; and (10) Joy Osuji[2], a CDCR Correctional Health Care Services Licensed Vocational Nurse. (*See TAC*.)

The TAC asserts eight causes of action against the Defendants, including: (1) Failure to provide medical health treatment under the Eighth Amendment (42 U.S.C. § 1983); (2) Failure to protect from harm under the Eighth Amendment (42 U.S.C. § 1983); (3) Deprivation of the right to familial relationship with decedent under the Fourteenth Amendment (42 U.S.C. § 1983); (4) Supervisory liability causing constitutional violations (failure to properly train, supervise, and discipline, 42 U.S.C. § 1983)[3]; (5) Wrongful death (Cal. Code of Civ. Proc. § 377.60); (6) Negligence; (7) Failure to provide medical care; and (8) Declaratory relief (28 U.S.C. § 2201)[4]. (*See TAC*.)

The Executive Defendants previously moved to dismiss Plaintiffs' FAC, and the Court granted dismissal of the first four causes of action with leave to amend and struck punitive damages. (*Order* [Doc. 29].) Though the causes of action five through seven were initially dismissed without leave to amend, they were reinstated after the Court granted Plaintiffs' motion for reconsideration. (Doc. 39.)

## III.  LEGAL STANDARD

A pleading can be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is only appropriate where the complaint lacks a cognizable legal theory or sufficient facts to

---

[2] The TAC added Defendants Osuji, Mendoza, Haas, and Raymond. (*See TAC*.)

[3] The first three causes of action are asserted against the Executive Defendants and Defendants Haas and Osuji. Whereas the fourth cause of action is asserted against the Executive Defendants and Defendant Haas only.

[4] The fifth, six, and eighth causes of action are asserted against all Defendants. The seventh cause of action is just asserted against Defendants Haas and Osuji.

24cv896-W-MMP

support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1988). At the motion to dismiss phase, the allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Redundant matter "consists of allegations that constitute a needless repetition of other averments in the pleading." *Moreno v. USG Corp.*, No. CIV 06-CV-2196BPCL, 2007 WL 951301, at *1 (S.D. Cal. Mar. 19, 2007). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* Impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Finally, scandalous matter is "that which improperly casts a derogatory light on someone, most typically on a party to the action." *Id.* "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).

Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). This discretion includes the right to deny leave to amend where such amendment would be futile. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)). "[W]here the plaintiff

24cv896-W-MMP

has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Nguyen*, 962 F.3d at 420 (holding that the district court did not err by denying leave to amend "because it was clear that the plaintiff had made her best case and had been found wanting") (internal quotations omitted).

## IV.   DISCUSSION

### A.   Causes of Action 1–4: Deliberate Indifference and Supervisor Liability

Defendants move to dismiss Plaintiffs' Section 1983 causes of action on several grounds. The first three causes of action under Section 1983: (1) failure to provide medical health treatment, (2) failure to protect from harm, and (3) deprivation of the right to familial relationship, require a showing of deliberate indifference. To state a claim for deliberate indifference under the Eighth Amendment, a plaintiff must allege facts showing that the defendant knew of and disregarded an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence, medical malpractice, or a difference of opinion concerning appropriate treatment is insufficient to establish a constitutional violation. *Toguchi v. Chung*, 391 F.3d 1051, 1057–160 (9th Cir. 2004). Deliberate indifference is therefore a "high legal standard" requiring facts plausibly showing that the defendant was subjectively aware of a significant risk of harm and consciously disregarded that risk. *Id.* at 1058–1060.

Similarly, to state a claim for deprivation of the right to familial relationship under the Fourteenth Amendment, a plaintiff must allege conduct that "shocks the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Absent that showing, courts have also dismissed these claims for failing to plead deliberate indifference. *See Est. of Bews v. Cty. of L.A.*, No. CV 23-9775 PA (JPRx), 2024 WL 1135671, at *5, 2024 U.S. Dist. LEXIS 48671, at *14 (C.D. Cal. Feb. 23, 2024) (dismissing deprivation of familial relationship claim where plaintiff failed to plead viable deliberate indifference claim); *Hernandez v. Cty. of Santa Clara*, No. 19-cv-07888-EJD, 2020 WL 3101041 at *5, 2020

24cv896-W-MMP

U.S. Dist. LEXIS 102568 at *14 (N.D. Cal. June 11, 2020) (dismissing same claim as it "fail[ed] to clear the lower bar of adequately alleging deliberate indifference"); *Fosbinder v. Cty. of San Diego*, No. 24-CV-733-RSH-SBC, 2024 WL 4631275, at *9 (S.D. Cal. Oct. 30, 2024) (same).

The fourth cause of action is premised on supervisor liability. Section 1983, however, does not permit liability based solely on a defendant's supervisory status. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a 'sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Circ. 1989)); *see also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (holding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution")(quoting *Iqbal*, 556 U.S. at 676 (2009)).)

The Court first addresses supervisory liability before turning to Plaintiffs' allegations of direct liability.

### I. Supervisor Liability
#### a. Executive Defendants – Causes of Action One Through Four

The Executive Defendants argue that the TAC's first four causes of action improperly rely on a theory of supervisory liability and fail to allege facts establishing their personal involvement in any constitutional violation. (*Mtn.* at 8–10.) The Executive Defendants further contend that the *Coleman* litigation does not provide a basis for liability. (*Id.*) Plaintiffs disagree, and in turn, maintain that the "[Executive] Defendants were deliberately indifferent to conditions that placed prisoners situated similarly to Mr. Olivo at substantial risk of harm." (*Opp'n* at 9.)

In an effort to address the deficiencies previously identified by the Court, the TAC added allegations concerning CDCR suicide prevention policies and a Quality Improvement Plan, including the following:

24cv896-W-MMP

> According to the MHSDS Program Guide (Program Guide), placement in an Administrative Segregation Unit is a risk factor for suicide. In addition to "dynamic" risk factors such as single-cell placement and fear for safety that requires ongoing assessment. As such, inmates undergo a pre-placement mental health screening to assess for "possible suicide risk, safety concerns, and mental health problems before placement in ASU." Moreover, CDCR's own policies recognize that suicide risk assessments are "critical" to suicide prevention. Accordingly, inmates housed in an Administrative Segregation Unit are required to be seen daily by correctional health staff conducting clinical rounds. Upon information and belief, Defendants were aware that inmates housed in the Administrative Segregation Unit, including Michael Olivo, were at an increased risk for suicide. Indeed, CDCR policy requires security checks in ASUs to be conducted every thirty (30) minutes.
>
> Upon information and belief, CDCR's internal review of Mr. Olivo's death contained four (4) recommendations for corrective action through a Quality Improvement Plan (QIP) in relation to his death. One of these recommendations included ensuring that staff responding to a suicide or attempted suicide have a cut-down kit.

(*TAC* at ¶ ¶ 56, 57, 68.) These additional allegations do not cure the deficiencies previously identified by the Court. In partially dismissing the FAC, the Court explained that Plaintiffs failed to allege facts demonstrating how deficiencies in CDCR's policies, training, actions, or inactions were attributable to the Executive Defendants or otherwise established deliberate indifference to Mr. Olivo's constitutional rights. (*Order* at 8–9.) The newly added allegations remain generalized and fail to identify how any specific policy, training deficiency, or omission attributable to the Executive Defendants caused the alleged constitutional violation. Conclusory assertions that policies or training were inadequate, absent factual allegations identifying a specific deficiency and its causal connection to the alleged harm, are insufficient to establish supervisor liability under Section 1983.

Nor do Plaintiffs allege facts demonstrating that any Executive Defendant, through his or her own individual conduct, violated the Constitution. *See Hydrick*, 669 F.3d at 942. Plaintiffs do not identify any action, or inaction, by any Executive Defendant demonstrating a failure to implement adequate suicide risk assessments. Mere awareness

24cv896-W-MMP

of systemwide problems, coupled with a failure to rectify them, is insufficient to impose liability under Section 1983. *See Carrea v. California*, No. EDCV07-1148CASMAN, 2009 WL 1770130, at *7 (C.D. Cal. June 18, 2009.) Accordingly, Plaintiffs have failed to plausibly allege a connection between any Executive Defendant's conduct to a constitutional violation.

Plaintiffs' reliance on the *Coleman* litigation does not alter this conclusion. *See Coleman v. Wilson*, 912 F. Supp (E.D. Cal 1995). As the Court previously explained, although the *Coleman* Special Master's recommendations are relevant to the adequacy of CDCR's mental health treatment and suicide prevention policies, Plaintiffs must identify specific deficiencies recognized in *Coleman* and plausibly connect those deficiencies to the facts alleged in this case. (*See Order* at 8–9.) In an apparent effort to do so, Plaintiffs added the following allegations to the TAC:

> On January 7, 2020, the Court adopted the *Coleman* Special Master's recommendations which required 90 percent of the custody and health care staff to receive annual suicide prevention training. (*Id.* at ¶47.) The Executive Defendants failed to take necessary and reasonable actions within their respective scope of responsibility to cure the identified deficiencies and ensure compliance with existing CDCR policies and procedures including annual requirements for suicide prevention training.

(*TAC* at ¶71–72.) These additional allegations remain insufficient. Even accepting them as true, Plaintiffs still fail to allege facts showing how any particular Executive Defendant was personally responsible for implementing or failing to implement the training requirement, or how any failure to do so caused or contributed to Mr. Olivo's death. Rather, Plaintiffs rely on the conclusory assertion that the Executive Defendants failed to ensure compliance with *Coleman*-related training mandates. Such generalized allegations of noncompliance do not satisfy the requirement of personal involvement or a causal connection under Section 1983. *See Hydrick*, 669 F.3d at 942. Nor does *Coleman* itself impose liability on prison officials based solely on their supervisory positions. *See Roberts v. Cate*, No. 2:08-CV-2624 JAM KJN, 2013 WL 268709, at *12 (E.D. Cal. Jan. 23, 2013.)

9

Despite the Court's prior guidance, the TAC continues to rely on generalized allegations concerning institutional failures and supervisory status rather than facts establishing personal involvement or a causal connection between any Executive Defendant's conduct and the alleged constitutional deprivation. The failure to make any meaningful changes to the TAC to improve the Section 1983 causes of action lends itself to a finding of futility. Accordingly, the first four causes of action against the Executive Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**.

### b. Defendant Haas – Fourth Cause of Action

The same deficiencies apply to the extent Plaintiffs seek to impose liability on Defendant Haas based on her supervisory role. Plaintiffs allege that Defendant Haas, as a senior psychologist specialist and clinical supervisor, was responsible for supervising staff and promulgating policies at RJD, including supervising Defendants Mendoza, Raymond, and Osuji. (*TAC* at ¶ 21.) Plaintiffs further allege, in conclusory fashion, that Defendant Haas "breached" the duty to properly train, supervise, or discipline subordinate staff. (*Id*. at 30–31.)

These allegations are insufficient to state a claim for supervisor liability. The TAC identifies no specific deficiency in training, supervision, or discipline attributable to Defendant Haas and contains no facts showing her personal involvement in, or a causal connection to, the alleged constitutional deprivation. Instead, Plaintiffs rely on Defendant Haas's title and supervisory responsibilities. Such allegations are insufficient under Section 1983. Therefore, the TAC fails to state a supervisory liability claim against Haas.

Since Defendant Haas is a newly named defendant, and Plaintiffs have not had the opportunity to cure these deficiencies as to her, the Court cannot conclude that amendment would be futile. Accordingly, the fourth cause of action against Defendant Haas is **DISMISSED WITH LEAVE TO AMEND**. This conclusion is limited to Plaintiffs' supervisory liability theory. Plaintiffs also allege that Defendant Haas failed to adequately conduct a mental health evaluation of Mr. Olivo. (See *TAC* at ¶60.) Because

that allegation presents a distinct theory of direct liability, the Court addresses it separately below.

## II.  Deliberate Indifference

### a.  Defendants Haas and Osuji – Causes of Action One Through Three

Defendants Haas and Osuji argue that the TAC alleges, at most, negligence or medical malpractice, which are insufficient to support a claim for deliberate indifference under Section 1983. (*Second Mtn.* at 14–15.) Plaintiffs respond that Defendants Haas and Osuji "knew of and disregarded a substantial risk to Mr. Olivo's health and safety[,]" and contend that, "where allegations 'raise suggestions of deliberate indifference,' courts 'must let the case proceed to discovery.'" (*Second Opp'n* at 9 (citing *Rocha v. Kernan*, No. EDCV 17-869-GW(FFMX), 2019 WL 2949031, at *10 (C.D. Cal. Mar. 13, 2019)).)

Apart from their titles and job descriptions, Plaintiffs allege the following with respect to Defendants Haas and Osuji:

> On January 12, 2023, Defendant LVN JOY OSUJI completed a pre-placement mental health screening. Upon information and belief, Defendant LVN JOY OSUJI failed to adequately complete a suicide risk assessment despite Mr. Olivo's increased risk factors for suicide and concerns for his safety.

> On January 19, 2023, Mr. Olivo met with Defendant KRISTIN HAAS (Senior Psychologist Specialist) for an initial Mental Health Placement Chrono (MHPC). According to the MHDS Program Guide (Program Guide), a MHPC indicates "the inmate-patient's LOC [level of care] medication status, any behavioral alerts, and their GAF [Global Assessment Functioning] score." Upon information and belief, Defendant KRISTIN HAAS failed to adequately complete Mr. Olivo's initial MHPC despite his increased risk of suicide and concerns for his safety which led to his placement in the ASU at RJD.

(*TAC* at ¶¶ 58, 60.) These allegations are insufficient to state a claim for deliberate indifference. Plaintiffs allege only that Defendant Haas and Osuji inadequately completed mental-health evaluations, but they do not identify any specific deficiency in the assessments, no warning signs that were ignored, and no facts showing that either Defendant was aware of a substantial risk that Mr. Olivo would commit suicide. Nor do Plaintiffs allege how any purported deficiency in the evaluations contributed to Mr.

11

Olivo's death. Instead, Plaintiffs ask the Court to infer that the evaluations must have been inadequate because Mr. Olivo later committed suicide. Such speculation is insufficient to plausibly establish deliberate indifference.

The Court likewise finds Plaintiffs' reliance on *Rocha* unpersuasive. In *Rocha*, the complaint alleged that the decedent had a well-documented history of depression, suicidal ideation, and suicide attempts during the two years she was treated by the defendant clinicians. *See Rocha v. Kernan*, 2019 WL 2949031, at *9–11. The plaintiffs further alleged that the defendants ignored repeated expressions of suicidal intent, failed to follow CDCR suicide-prevention policies, and repeatedly copied inaccurate information into suicide risk assessments, creating a false record that the decedent was not suicidal. *Id*. Based on those detailed allegations, the court concluded that the complaint plausibly supported an inference that the defendants knew of and consciously disregarded a substantial risk of suicide. *Id*.

This case bears little resemblance to *Rocha*. Plaintiffs do not allege that Defendants Haas and Osuji were aware of a documented history of suicidal ideation, that Mr. Olivo communicated suicidal thoughts to them, that they ignored specific warning signs, or that they knowingly falsified or disregarded information concerning his suicide risk. Rather, Plaintiffs allege only that the evaluations were inadequately performed during isolated encounters with Mr. Olivo shortly before his death. Accordingly, *Rocha* does not support Plaintiffs' contention that a mere suggestion of deliberate indifference is sufficient to proceed to discovery. Rather, *Rocha* involved detailed factual allegations supporting an inference that defendants were subjectively aware of and consciously disregarded a substantial risk of suicide. No comparable allegations are present here. Since the TAC does not plausibly allege that Defendants Haas or Osuji were aware of and disregarded a substantial risk that Mr. Olivo would commit suicide, Plaintiffs fail to state a claim for deliberate indifference against either Defendant.

Because Defendants Haas and Osuji are newly named defendants, and Plaintiffs have not had the opportunity to cure the deficiencies as to them, the Court cannot

24cv896-W-MMP

conclude that amendment would be futile. Accordingly, the first three causes of action against Defendants Haas and Osuji are **DISMISSED WITH LEAVE TO AMEND**.

## B. Causes of Action Five and Six – Executive Defendants

Next, the Executive Defendants argue that Plaintiffs' state law claims for wrongful death and negligence should be dismissed as an improper claim against supervisors because the Executive Defendants are immunized by California Government Code Section 820.8. (*Mtn*. at 12.) Plaintiffs argue against immunity. (*Opp'n* at 10–11.)

Regarding liability of public employees, Section 820.8 states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov't Code § 820.8. The Ninth Circuit has explained that "supervisory personnel whose personal involvement is not alleged may not be held responsible for the acts of their subordinates under California law." *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975) (citing Cal. Gov. Code § 820.8); *see also Weaver by & through Weaver v. State*, 63 Cal.App.4th 188, 202-03 (1998) (a Commissioner of CHP officers was not liable because he did not train officers and was not personally involved in the incident in any way).

Although a public employee may be held liable for any injury proximately caused by his own negligence, Plaintiffs have failed to allege any specific information which personally links the Executive Defendants to Mr. Olivos's death for many of the same reasons discussed above. Statistics regarding prison suicides, citations to RJD's mental health policies, proposed remedial measures, and non-implementation of Coleman recommendations do not impose individual liability on the Secretary for CDCR (Defendant Macomber), the Undersecretary of Health Care Services for CDCR (Defendant Toche), the Director of the Division of Adult Institutions (Defendant Gipson), the Deputy Director of the Statewide Mental Health Program for CDCR (Defendant Mehta), the Warden for RJD (Defendant Hill), or the Health Care Chief Officer for RJD

(Defendant Podratz). The facts alleged, even taken as true as the Court is bound to do at this stage, are insufficient to warrant finding personal negligence.

Plaintiffs, however, argue that statutory immunity does not apply because Section 820.2 only confers immunity with respect to "basic policy decisions" and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions. (*Opp'n* at 10–11.) In so arguing, Plaintiffs confuse the applicable legal standard. The Ninth Circuit and the California Supreme Court apply the "basic policy decisions" standard to Section 820.2 immunity, not Section 820.8. *McQuirk v. Donnelley*, 189 F.3d 793, 799 (9th Cir. 1999); *Johnson v. California*, 69 Cal. 2d 782, 793, 447 P.2d 352, 360 (1968).

Plaintiffs do not address the applicability of Section 820.8 immunity, which is claimed by the Executive Defendants. However, in the Court's own research, Section 820.8 immunity applies to Plaintiffs' causes of action against the Executive Defendants. Defendants are being sued in their individual capacities, and the Plaintiffs have repeatedly failed to plead facts which link the alleged personal negligence of the Executive Defendants to Mr. Olivos's death. As a result, Plaintiffs' state law causes of action against the Executive Defendants are barred by California Government Code Section 820.8. Accordingly, the fifth and sixth causes of action against the Executive Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**.

**C. Seventh Cause of Action – Defendants Haas and Osuji**

Additionally, Defendants Haas and Osjui argue that Plaintiffs' seventh cause of action, failure to summon medical care, under California Government Code Section 844.6 and 845.6, should be dismissed since there are no allegations in the TAC that support the claim. (*Second Mtn*. at 10–11.) The Court agrees.

Section 844.6 of the California Government Code states that public entities are not liable for "injury to any prisoner" but clarifies that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). This provision is partially modified by

14

Section 845.6, which states that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody . . . but [a] public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6

Here, the TAC alleges that Defendant Osuji failed to "adequately" conduct a mental health evaluation on January 12, 2023, as well as Defendant Haas on January 19, 2023. (*TAC* at ¶¶ 58, 60.) Plaintiffs also allege that "Defendants knew or had reason to know that on or before January 26, 2023[5], Michael Olivo needed immediate medical care and was not given such care." (*TAC* at ¶ 122.) As Defendants Osuji and Haas correctly assert, "[i]n order to state a claim against Defendants for failure to summon medical care, he would have to allege that when they saw Plaintiff . . . he was at that time suffering a physical injury requiring immediate medical care, they knew or should have known about this need for immediate care, yet they failed to summon anyone to provide such care." (*Second Mtn*. at 10–11.) Plaintiffs do not allege any facts or circumstances that indicate that Defendant Osuji and Haas were in a position where they knew or should have known that Mr. Olivo needed immediate medical care.

Since Defendant Haas and Osuji are newly named defendants, and Plaintiffs have not had an opportunity to cure the deficiencies in their allegations as to these Defendants, it is not clear that amendment would be futile. For these reasons, the sixth cause of action against Defendant Haas and Osuji is **DISMISSED WITH LEAVE TO AMEND**.

### D.   Punitive Damages

Lastly, Defendants move to strike Plaintiffs' request for punitive damages again because like its predecessors, the TAC lacks allegations sufficient to support punitive

---

[5] Mr. Olivo died on January 26, 2023. (*TAC* at ¶ 1.)

24cv896-W-MMP

damages. (*Mtn.* at 13; *Second Mtn.* at 16–17.) Although Plaintiffs insist that they have sufficiently alleged facts to support a claim for punitive damages, for the same reasons illustrated above and those enumerated by the Court when it struck the request for punitive damages the first time, the facts alleged do not support such a claim. (*See Opp'n.* at 12; *Second Opp'n* at 12.) The facts do not show "evil motive or intent, or reckless and callous indifference to federally protected rights," as would be required to succeed in a Section 1983 action for punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983). The facts also do not reflect "clear and convincing evidence that the defendant[s] [have] been guilty of oppression, fraud, or malice…," as would be required to warrant punitive damages for the state law claims. Cal. Civ. Code. § 3294(a). As a result, Defendants' motion to strike punitive damages is **GRANTED.**

## V.    CONCLUSION

For the above reasons, the Court **GRANTS** the motion to dismiss the Executive Defendants from the TAC (causes of action one through six) **WITHOUT LEAVE TO AMEND** because the record shows amendment would be futile. Plaintiffs have made two attempts to plead the same causes of action and there is no indication that Plaintiffs have other facts to allege to cure the deficiencies discussed above.

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

24cv896-W-MMP

However, the Court **GRANTS** Defendant Haas's motion to dismiss the fourth cause of action **WITH LEAVE TO AMEND** and Defendant Haas and Osuji's motion to dismiss causes of action one through three and seven **WITH LEAVE TO AMEND** since Plaintiffs have not had the opportunity to cure the deficiencies against these Defendants and there is no basis to conclude that amendment would be futile at this time. The Court also **GRANTS** Defendants' motion to strike punitive damages. Plaintiffs shall have until **June 24, 2026** to file a fourth amended complaint in compliance with this Order.

**IT IS SO ORDERED.**

Dated:  June 10, 2026

Hon. Thomas J. Whelan
United States District Judge

24cv896-W-MMP